IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MICHAEL L. EDWARDS,

            Plaintiff,

    vs.                             Civil Action 2:14-cv-1055
                                     Judge Smith
COMMISSIONER OF SOCIAL SECURITY,    Magistrate Judge King

            Defendant.

## REPORT AND RECOMMENDATION

This is an action instituted under the provisions of 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's applications for disability insurance benefits and supplemental security income.  This matter is now before the Court for consideration of *Plaintiff Michael L. Edwards's Statement of Errors*, Doc. No. 12 ("*Statement of Errors*"), *Defendant's Memorandum in Opposition*, Doc. No. 17 ("*Commissioner's Response*"), and *Plaintiff Michael L. Edwards's Reply to the Defendant's Memorandum in Opposition*, Doc. No. 18 ("*Reply*").

I.    **Background**

Plaintiff Michael L. Edwards filed his applications for benefits on June 28, 2007, alleging that he has been disabled since April 14, 2007.  *PAGEID* 362, 365-67.  The applications were denied initially and upon reconsideration and plaintiff requested a *de novo* hearing before an administrative law judge.  *PAGEID* 246-57, 263.

An administrative hearing was first held on June 25, 2010, at

1

which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. *PAGEID* 78-109, 177. In a decision dated July 15, 2010, the administrative law judge concluded that plaintiff was not disabled from April 14, 2007, through the date of the administrative decision. *PAGEID* 169-79. On November 25, 2011, the Appeals Council vacated that decision and remanded the matter to the administrative law judge for further consideration. *PAGEID* 239-42.

A second administrative hearing was held on November 1, 2012, at which plaintiff, represented by counsel, appeared and testified, as did William Kiger, who testified as a vocational expert, and Douglas Pawlarczyk, Ph.D., a psychologist, who testified as a medical expert. *PAGEID* 57, 110-58. In a decision dated January 14, 2013, the administrative law judge again concluded that plaintiff was not disabled from April 14, 2007, through the date of that administrative decision. *PAGEID* 57-65. That decision because the final decision of the Commissioner of Social Security when the Appeals Council declined review on June 9, 2014. *PAGEID* 34-36.

Plaintiff was 53 years of age at the time of the second administrative hearing. *PAGEID* 110, 362. Plaintiff was last insured for disability insurance purposes on June 30, 2012. *PAGEID* 57-58. Plaintiff has at least a high school education, is able to communicate in English, and has past relevant work as a technical director, as a floor cleaner, and as a loader. *PAGEID* 64, 82, 177. He has not engaged in substantial gainful activity since April 14, 2007, his alleged disability onset date. *PAGEID* 59.

## II. Administrative Hearing

Plaintiff testified that he last worked full-time in 2007

unloading trucks, but that he had to take breaks because of chest pain. *PAGEID* 118. He lives alone and does his own housework, although not for extended periods. *PAGEID* 120, 131. He becomes winded or tired and must rest. *PAGEID* 120-21, 140. He also does his own cooking and grocery shopping, but becomes tired and winded from carrying groceries. *PAGEID* 122, 131-32. He usually walks to a nearby grocery store and occasionally gets a ride from a neighbor. *PAGEID* 132. He can care for his own personal needs, but has difficulty with reaching and stretching. *PAGEID* 133-34.

Plaintiff testified that he can stand for a couple of hours at a time and would probably need a break if he had to stand all day. *PAGEID* 121, 141-42. He has no problem walking as long as he does not have to walk too quickly or too far; he estimates that he can walk for twenty minutes at a time. *PAGEID* 121, 142. He can lift approximately twenty pounds, *PAGEID* 122, and can sit for a while before having to change position. *PAGEID* 122-23. He can climb four or five steps occasionally throughout the day. *PAGEID* 123. When he climbs the stairs to his second floor apartment, his pulse rate increases, he has shortness of breath and he occasionally breaks into a sweat. *PAGEID* 123-24.

Plaintiff often experiences chest pain. *PAGEID* 124-26, 138-39. He experiences at least mild chest pain every day. *PAGEID* 139. He takes nitroglycerine and uses a CPAP machine. *PAGEID* 124-26. Warm showers also help to alleviate the pain. *PAGEID* 138. Sitting for ten minutes helps him regain his composure. *PAGEID* 139.

Plaintiff also complained of problems concentrating, which keeps him from working. *PAGEID* 126-27. For example, plaintiff has taken

the wrong bus and has forgotten to get off the bus.  *PAGEID* 127-28.
He has set off the smoke alarm once or twice because he forgot that he
was cooking.  *PAGEID* 128. Plaintiff sees a doctor once a month; he
attends biweekly or weekly counseling sessions.  *PAGEID* 128-29.

Plaintiff also experiences depression, although he thinks that
working would help to alleviate that condition.  *PAGEID* 129-30.  When
he becomes depressed, he sometimes goes to bed; as a result, he
sometimes misses social functions.  *PAGEID* 134-35.

Plaintiff experiences approximately two dizzy spells a month,
each of which lasts approximately ten to fifteen seconds to a minute.
*PAGEID* 136.  He passed out on one occasion.  *PAGEID* 136-37.

Plaintiff suffers from fatigue, during which his arms and legs
feel heavy and his breathing is labored.  *PAGEID* 140-41.

Plaintiff experiences knee pain every other month, which limits
his range of movement and ability to walk.  *PAGEID* 144-45.  He uses
heating pads and ice to treat the pain.  *PAGEID* 145.

He reads, but occasionally must read things over a few times.
*PAGEID* 132.  He is not involved in social groups, but does volunteer
at a soup kitchen approximately once per month.  *PAGEID* 132-33.
Financial constraints prevent him from eating out or going to the
movies. *PAGEID*  137. He watches television, goes to the library, uses
a computer, and reads sports news.  *PAGEID* 134-35.

Plaintiff estimates that he has three "good" days per month where
he gets up, eats, gets dressed, gets out of the house, and timely
attends appointments.  *PAGEID* 142-43.  On his "bad" days, plaintiff
must cope with physical challenges, depression, and missed
appointments. *PAGEID* 143.

4

The psychological expert testified that the record documents major depression, which responds to medication and which is in current remission.  *PAGEID* 146.[1]  Moreover, the record does not document a continuous 12-month period when plaintiff's depression has not been in remission.  *Id*.  The expert also testified that plaintiff's condition neither meets nor equals a listed mental impairment.  *PAGEID* 146-47. Plaintiff's ability to function is only mildly restricted; there is no evidence of decompensation. *PAGEID* 147. According to the psychological expert, plaintiff could perform simple, moderately complex, and complex tasks tasks without limitation. *Id.*  Plaintiff's ability to relate supervisors, co-workers or the public; his ability to deal with stressful situations such as quotas and high production demands; and his ability to comply with time and attendance requirements of work activity were unlimited.  *PAGEID* 148.

The vocational expert characterized plaintiff's past work as a laborer and floor cleaner as medium and unskilled. *PAGEID* 150. Plaintiff's past work as a technical director was light, (although sometimes performed at the medium level of exertion) and skilled. *PAGEID* 150-51.  That job also conferred transferrable skills to jobs at the sedentary level. *PAGEID* 150-51, 156.

The administrative law judge asked the vocational expert to assume a claimant with plaintiff's vocational profile and, *inter alia*, a residual functional capacity for lifting up to ten pounds frequently and twenty pounds occasionally, for standing and walking for up to two hours at a time for at least six hours out of an eight-hour period, for walking about 30 minutes at one's own pace for no more than four

---

[1] According to the expert, the record also documented substance abuse. *PAGEID* 148.

hours out of an eight hour period, for sitting two hours at a time for
at least six hours out of an eight-hour period, but that the
individual could not climb ropes, ladders, scaffolds, but could
occasionally climb ramps and stairs, could occasionally stoop, kneel,
bend, crawl, and crouch but could not work around hazards such as
unprotected heights, hazardous or dangerous machinery; the claimant
should avoid concentrated exposure to temperature extremes, damp and
dry places, or pulmonary irritants such as gases, fumes or dust.
*PAGEID* 151-52. The vocational expert testified that such a claimant
could perform such light, unskilled jobs as routing clerk
(approximately 51,000 such jobs in the national economy), production
helper (approximately 88,000 jobs in the national economy), and
inspector (approximately 131,000 jobs in the national economy). *PAGEID*
153-54. In response to questioning by plaintiff's counsel, the
vocational expert also testified that a sit/stand option would
preclude the performance of these jobs, as would plaintiff's
subjective complaints, if found to be credible. *PAGEID* 156.

**III. Evidence of Record[2]**

On August 9, 2007, Robert C. Woskobnick, D.O., consultatively
examined plaintiff. *PAGEID* 526-28. Plaintiff reported that he can
occasionally walk up to three to five miles, but that he experiences
occasional chest pain. *PAGEID* 526. Dr. Woskobnick noted that
plaintiff has a normal gait and uses no assistive devices. *Id*.

On September 18, 2007, Eli Perencevich, D.O., reviewed the record
for the state agency and completed a Physical Residual Functional

---

[2] The Court's discussion of the evidence is limited to the issues presented in
plaintiff's *Statement of Errors*.

Capacity assessment. *PAGEID* 535-42.  According to Dr. Perencevich, plaintiff could, *inter alia*, lift and/or carry twenty pounds occasionally and ten pounds frequently and could stand and/or walk for about six hours in an eight-hour workday.  *PAGEID* 536.  Plaintiff's cardiac symptoms were controlled.  *Id*.  He had slightly decreased range of movement in his knees but, otherwise, his range of movement, strength, sensation, and gait were all within normal limits.  *Id*.  Dr. Perencevich found that plaintiff's subjective complaints were not fully credible.  *PAGEID* 540.

On February 23, 2009, Shannon Peltier, M.A., PC-CR, plaintiff's counselor, noted a diagnosis of Major Depressive Disorder, Recurrent, Severe.  *PAGEID* 684.  Ms. Peltier, who had worked with plaintiff since August 2008, reported that plaintiff's condition resulted in a desire to remain alone, a lack of energy and motivation, and sadness and extreme anxiety.  *Id*.  According to Ms. Peltier, these symptoms impacted plaintiff's ability to work in the following ways:  He is unable to remember or complete tasks in a timely manner; he is unable to attend work or to remain focused on a task for an extended amount of time; and his level of anxiety can escalate to panic when he is uncomfortable in situations, which may be aggravated by crowds or open spaces.  *Id*.

On November 15, 2010, Dr. Perencevich again reviewed the record for the state agency and completed a Physical Residual Functional Capacity assessment.  *PAGEID* 191-93.  According to Dr. Perencevich, plaintiff could, *inter alia*, lift and/or carry twenty pounds

7

occasionally and ten pounds frequently and stand and/or walk for about six hours in an eight-hour workday. *PAGEID* 192.  Plaintiff had postural limitations because of pain, but he had no other limitations. *PAGEID* 192-93.

On March 3, 2011, Steve E. McKee, M.D., also reviewed the record for the state agency and completed a Physical Residual Functional Capacity assessment. *PAGEID* 218-19.  According to Dr. McKee, plaintiff could, *inter alia*, lift and/or carry twenty pounds occasionally and ten pounds frequently and stand and/or walk for about six hours in an eight-hour workday. *PAGEID* 218.  Plaintiff had postural limitations due to pain symptoms and some environmental limitations, but had no other limitations. *PAGEID* 218-19.

In October 2012, Dr. Venkatarama Gaddam, plaintiff's treating cardiologist, completed a Cardiac Functional Capacity Questionnaire form. *PAGEID* 1089-93.  Dr. Gaddam noted that plaintiff's symptoms included chest pain and shortness of breath, but that plaintiff had no marked limitation of physical activity. *PAGEID* 1090.  When asked to describe any other limitations that would affect plaintiff's daily activity or ability to work at a regular job on a sustained basis, Dr. Gaddam responded that it "[d]epends on the job[.]" *PAGEID* 1093.

**IV.  Administrative Decision**

The administrative law judge found that plaintiff's severe impairments consist of coronary artery disease, hypertension – controlled, and low grade tricompartment arthrosis of the left knee. *PAGEID* 60.  The administrative law judge went on to find that

8

plaintiff's impairments neither meet nor equal a listed impairment and leave plaintiff with the residual functional capacity ("RFC") to perform light work with the following abilities and limitations: able to lift ten pounds frequently and twenty pounds occasionally; he is able to stand two hours at a time for a total of six hours in an eight-hour workday; to walk at own pace for thirty minutes at a time for a total of four hours in an eight-hour workday; to sit for two hours at a time and a total of six hours in an eight-hour workday; he would be precluded from climbing ropes, ladders, scaffolds; can occasionally climb ramps/stairs; he could occasionally stoop, kneel, bend, crawl, and crouch; he would be precluded from work involving workplace hazards such as unprotected heights and dangerous machinery; and must avoid concentrated exposure to temperature extremes, damp/dry places, and respiratory irritants such as gases, fumes, and dust. *PAGEID* 61-63. The administrative law judge relied on the testimony of the vocational expert to find that, with this RFC, plaintiff is able to perform a significant number of jobs in the national economy. *PAGEID* 64-65. Accordingly, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act from April 14, 2007, through the date of the administrative decision. *PAGEID* 65.

**V.   Discussion**

Pursuant to 42 U.S.C. § 405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence

and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Buxton v. Haler*, 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Longworth,* 402 F.3d at 595.

In his *Statement of Errors*, plaintiff first argues that the administrative law judge's RFC determination for a reduced range of light work was procedurally deficient and was not supported by substantial evidence. *Statement of Errors*, pp. 6-9. Plaintiff specifically argues that the administrative law judge erred by including in plaintiff's RFC the three (3) walking restrictions, which were not included in the assessments of the state agency reviewing

10

physicians, and upon which the administrative law judge indicated that
he relied. *Id*. at 7.  Plaintiff contends that the administrative law
judge's failure to accurately explain the source of these restrictions
violated the administrative law judge's duty under SSR 96-8p, which
addresses an administrative law judge's RFC determination.[3]  *Id*.  The
Commissioner concedes that the administrative law judge included in
the RFC three restrictions on walking that were not part of the state
agency reviewing physicians' opinions, but argues that any error in
this regard was harmless. *Commissioner's Response*, p. 3.  The
Commissioner specifically notes that these limitations were more
restrictive than those found by the state agency physicians, on whose
opinions the administrative law judge relied; therefore, the error
would not change the ultimate conclusion that plaintiff is able to
perform a significant number of jobs that exist in the national
economy. *Id*. at 3-4. This Court agrees.

The record reflects that plaintiff could occasionally walk up to
three to five miles in 2007, that he has a normal gait, and that he
uses no assistive devices. *PAGEID* 526.  Plaintiff testified that he
can walk for 20 minutes at a time. *PAGEID* 121, 142. According to the
state agency reviewing physicians, plaintiff could, *inter alia*, lift
and/or carry twenty pounds occasionally and ten pounds frequently and
could stand and/or walk for about six hours in an eight-hour workday.
*PAGEID* 192, 218, 536.  Both Drs. Perencevich and McKee concluded that

---

[3] In particular, under the Ruling, an administrative law judge must, *inter alia,* "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . ." SSR 96-8p, 1996 WL 374184, *7 (Jul. 2, 1996).

plaintiff had postural limitations because of pain, *PAGEID* 192-93, 218-19, and Dr. McKee further concluded that plaintiff had some environmental limitations, *PAGEID* 218-19.  Dr. Gaddam, plaintiff's treating cardiologist, noted in October 2012 that plaintiff had no marked limitation of physical activity.  *PAGEID* 1090.  The administrative law judge expressly adopted the assessments of the state agency reviewing physicians. *PAGEID* 63.

The administrative law judge therefore erred in including in the RFC determination three additional walking restrictions (*i.e.,* that plaintiff could walk only at his own pace; that plaintiff could walk for no more than thirty minutes at a time; and that plaintiff could walk for no more than four hours total in a workday) that were not found in the assessments of the state agency reviewing physicians upon whose opinions the administrative law judge relied, and in failing to explain the basis for these restrictions. However, these additional limitations were more restrictive than the limitations suggested by the state agency physicians' assessments and the medical evidence.

As noted, the Commissioner concedes that the administrative law judge erred in failing to explain he source of these walking restrictions, but contends that the error was harmless. Where the failure to follow the Commissioner's own regulations prejudices a claimant or deprives a claimant of a substantial right, the decision of the Commissioner cannot be upheld even if it is supported by substantial evidence.  *Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 651 (6th Cir. 2009)(citing *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742,

12

746 (6th Cir. 2007); *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 546-
47 (6th Cir. 2004). Where the procedural rule at issue is intended to
confer rights on the claimant, remand is almost always warranted, even
if "a different outcome on remand is unlikely." *Wilson*, 378 F.3d at
546. This is true, moreover, even if the Commissioner's flawed
decision is supported by substantial evidence. *Rabbers*, at 651.
Where the procedural rule at issue is merely an "adjudicatory tool"
designed to help the agency make its decision, however, remand is
appropriate only where the failure to follow the required procedure
prejudices the claimant. *Rabber*, 582 F.3d at 651. *See also Wilson*,
at 546-47. Viewed another way, an error falling within the second
category is properly characterized as harmless when "concrete factual
and medical evidence" is "apparent in the record" and demonstrates
that the Commissioner would have reached the same result even had the
administrative law judge followed the required procedure. *Id.* at 657-
58.

     This Court concludes that the error conceded by the Commissioner
was harmless. It is clear that compliance with the Commissioner's Rule
would not have changed the outcome of the proceedings. Accordingly, to
the extent that the administrative law judge erred, that error was
harmless and will not serve as a basis for reversal or remand.

     In a somewhat related argument, plaintiff complains that the
administrative law judge must have included these additional walking
restrictions in his RFC determination based on plaintiff's testimony,
yet went on to find that plaintiff's subjective complaints were not

entirely credible. *Statement of Errors*, p. 8.  According to plaintiff, it is "fundamentally inconsistent for the [administrative law judge] to add unexplained restrictions to assessments which plainly did not include them, yet then state because" plaintiff was not credible, the administrative law judge looked to other evidence in the record. *Id*. at 8-9.  Plaintiff's argument in this regard essentially challenges the administrative law judge's credibility determination.

In evaluating a claimant's credibility, an administrative law judge should consider the objective medical evidence and the following factors:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (*e.g.*, lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7, 1996 WL 374186 (July 2, 1996).  The administrative law judge's credibility determination is accorded great weight and

14

deference because of the administrative law judge's unique opportunity to observe a witness's demeanor while testifying.  *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (citing *Gaffney v. Bowen*, 825 F.2d 98, 973 (6th Cir. 1987)).  However, credibility determinations must be clearly explained.  *See Auer v. Sec'y of Health & Human Servs.*, 830 F.2d 594, 595 (6th Cir. 1987).  If the administrative law judge's credibility determinations are explained and enjoy substantial support in the record, a court is without authority to revisit those determinations.  *See Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383, 386–87 (6th Cir. 1978).

In the case presently before the Court, the administrative law judge evaluated plaintiff's credibility as follows:

> The claimant alleged that he is unable to work primarily as a result of chest pain, shortness of breath, and fatigue. After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.
>
> The claimant's activities of daily living – as set forth in greater detail above – are inconsistent with his allegation of disability.  The claimant testified that he is only able to walk two to three blocks at a time, yet he has informed treating health care providers in May 2010 that he can walk up to a ¼ mile before having any pain (Exhibit 26F).  In fact, in August 2007, the claimant reported that he can walk 3-5 miles (Exhibit 3F).  In July 2008, a treating mental health care professional noted that the claimant "does not seem motivated at this time to regain employment – questionable malingering and may be attempting to get SSI" (Exhibit 14F).  Thus, the undersigned finds that the claimant's allegations are not credible and looks instead

> to the objective and opinion evidence of record for insight
> into the claimant's abilities and limitations.
>
> The claimant has sought treatment with complaints of
> intermittent chest pain and shortness of breath; however,
> aside from an abnormal EKG, all other cardiological testing
> has been rather unremarkable (Exhibits 3F, 6F, 7F, 13F,
> 15F, 17F, 22F, 23F, 28F, 29F, 30F, 37F, 39F, 48F).
> Further, the claimant's coronary artery disease and
> hypertension have been described as stable by treating
> sources (Exhibits 3F, 6F, 7F, 13F, 15F, 17F, 22F, 23F, 28F,
> 29F, 30F, 37F, 39F, 48F).  While the claimant has
> complained of shortness of breath, pulmonary function
> studies have been interpreted as normal (Exhibits 33F,
> 36F).  Though the claimant reports mental symptoms, his
> depression has consistently been described as in remission
> by treating sources; likewise mental status examinations
> findings have consistently been unremarkable (Exhibits 5F,
> 14F, 18F, 19F, 20F, 24F, 27F, 31F, 34F, 35F, 41F, 44F).
>
> In August 2007, a consultative physician reported
> unremarkable examination findings (Exhibit 3F).  In October
> 2012, a treating cardiologist refused to identify any
> specific limitations caused by the claimant's impairments
> (Exhibit 46F).

*PAGEID* 62-63.  The administrative law judge noted and followed the

appropriate standards, performed an appropriate evaluation of the

evidence, and clearly articulated the bases of his credibility

determination.  Moreover, to the extent that plaintiff challenges the

administrative law judge's credibility determination in connection

with the inclusion in plaintiff's RFC of the three walking

restrictions, that error was harmless for the reasons previously

discussed.

Plaintiff next argues that the administrative law judge erred in

his consideration of plaintiff's mental impairments by adopting the

opinion of Dr. Pawlarczyk, the testifying medical expert and a non-

examining source opinion, and not sufficiently considering the opinion

16

of plaintiff's counselor, Shannon Peltier, M.A., PC-CR.  *Statement of
Errors*, pp. 10-13.  The Commissioner contends that a counselor is not
an "acceptable medical source" and that the administrative law judge
adequately considered plaintiff's mental impairments.  *Commissioner's
Response*, pp. 5-6.  This Court agrees.

A counselor is not an "acceptable medical source" requiring "good
reasons" for the weight given to that source's opinion.  *See* 20 C.F.R.
§§ 404.1527(a)(2), (c)(2), 416.927(a)(2), (c)(2); SSR 06-03p, 2006 WL
2329939 (Aug. 2006)(identifying "acceptable medical sources").
However, evidence from counselors may be considered "to show the
severity of [the claimant's] impairment(s) and how it affects [the
claimant's] ability to work. . . ."  20 C.F.R. §§404.1513(d)(1);
416.913(d)(1). Among the factors to be considered in evaluating the
opinions of "other sources" are the length of time and frequency of
treatment, consistency with other evidence, the degree to which the
source presents relevant evidence to support the opinion, how well the
opinion is explained, whether the source has a special expertise and
any other factor supporting or refuting the opinion. SSR 06-03p, 2006
WL 2329939, *4 - 5 (August 9, 2006).  *See also Cole v. Astrue*, 661
F.3d 931, 939 n.4 (6th Cir. 2011).

In the case presently before the Court, the record indicates that
Ms. Peltier met plaintiff in August 2008 and worked with plaintiff for
approximately six months before rendering her opinion as to
plaintiff's condition.  *PAGEID* 684.  Specifically, on February 23,
2009, the counselor opined that plaintiff's depression and associated
symptoms impacted his ability to work.  *Id*.  Although the

17

administrative law judge did not identify Ms. Peltier by name, he considered her opinion and explained why he assigned little weight to that opinion:

> State agency psychological consultants first opined that there was insufficient evidence to find that the claimant has a medically determinable mental impairment (Exhibit 11F). In February 2009, a treating mental health counselor reported that the claimant's impairments may interfere with his ability to remember and concentrate, that he is unable to remember or complete tasks in a timely manner, and that his condition may be aggravated by crowds or open spaces (Exhibit 18F). Later, state agency psychological consultants opined that the claimant had severe mental impairments that limit him to performing simple tasks with low social requirements and low stress (Exhibits 10A, 11A, 14F, 15A). However, these opinions are all granted little weight because as Dr. Pawlarczyk testified that the depression has consistently been described as in remission, and that the examinations have consistently been unremarkable. The medical expert's opinion that the claimant has no mental limitations is granted great weight. The medical expert is a psychologist and had the benefit of re[viewing] the entire record. Dr. Pawlarczyk previously worked for the State agency and has a good knowledge of the Social Security rules and regulations.
>
> In making this finding, the undersigned has also considered the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1).

*PAGEID* 60-61. By noting and discussing Ms. Peltier's opinion in this fashion, the administrative law judge complied with the applicable regulations that he may "consider" this evidence. Moreover, as the Commissioner points out, *Commissioner's Response*, p. 5, the vocational expert testified that, even assuming limitations on high stress jobs, jobs that involve fast paced production work, strict time requirements and more than occasional interaction with co-workers, supervisors and the general public, *PAGEID* 152-53, such a claimant could nevertheless

perform jobs at the light, unskilled level, including such jobs as
routing clerk (approximately 51,000 jobs in the national economy),
housekeeping cleaner (approximately 223,000 jobs in the national
economy), and production helper (approximately 88,000 in the national
economy). *Id*. In short, the administrative law judge did not err in
his consideration of the opinion of plaintiff's mental health
counselor. Moreover, even accounting for the limitations identified by
Ms. Peltier, plaintiff is nevertheless able to perform a significant
number of jobs in the national economy.

Finally, the administrative law judge's decision to assign great
weight to Dr. Pawlarczyk's testimony is supported by substantial
evidence. As noted *supra*, Dr. Pawlarczyk testified that plaintiff's
depression is in remission and he saw in the record no continuous 12-
month period when plaintiff's depression was not in remission. *PAGEID*
146. Moreover, Dr. Pawlarszyk testified that, even when plaintiff's
depression is out of remission, his symptoms respond to medication.
*Id*. Dr. Pawlarczyk testified that plaintiff's condition neither met
nor equaled a listed impairment and imposed no limitations on
plaintiff's ability to work. *PAGEID* 146-47. Dr. Pawlarczyk's
testimony was based on his review of treatment notes and other
objective evidence. The administrative law judge's decision to assign
great weight to Dr. Pawlarczyk's opinion enjoys substantial support in
the record.

Having carefully considered the entire record in this action, the
Court concludes that the decision of the Commissioner is supported by
substantial evidence. It is therefore **RECOMMENDED** that the decision
of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

19

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See*, *e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

*s/Norah McCann King*
Norah M<sup>c</sup>Cann King
United States Magistrate Judge

June 4, 2015